1  JOHN HENDRICKSON (SBN 257298)
   Hendrickson Legal Services
2  703 Second Street, Fourth Floor
   Santa Rosa, CA  95404
3  Telephone: (707)284-3808
   Facsimile: (707)313-0161
4  pleadings@hendricksonlegal.com

5  Attorneys for Plaintiff
   CHERYL BOWER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| Cheryl Bower, an individual, | Case No: 3:09-cv-02654-CRB |
|---|---|
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT WELLS FARGO'S MOTION TO DISMISS** |
| vs. | |
| Wells Fargo Bank, N.A., dba ASC, America's Servicing Company; The Cal-Bay Mortgage Group, a California Corporation, NDex West, L.L.C., a Delaware Limited Liability Company; and DOES 1-25 inclusive, | |
| Defendants. | |

**TABLE OF CONTENTS**

**INTRODUCTION**..........................................................................................................................5

**STATEMENT OF FACTS**..........................................................................................................5

 **ARGUMENT**...............................................................................................................................8

**The Legal Standard on a Motion to Dismiss        8**

**Plaintiff Has Properly Pleaded a Valid Cause of Action For Negligent Servicing As to Defendant ASC      10**

**Plaintiff Has Properly Pleaded A Valid Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing as to Defendant ASC 11**

**Plaintiff Has Properly Pleaded a Valid Cause of Action for Fraud and Misrepresentation as to Defendant ASC     13**

**Plaintiff Has Properly Pleaded a Valid Cause of Action for Breach of Contract as to Defendant ASC         14**

**Plaintiff Has Properly Pleaded a Valid Cause of Action for Violation of California Civil Code Section 2954 as to Defendant ASC        15**

**Plaintiff Has Properly Pleaded a Valid Cause of Action for Violations of the Truth in Lending Act and the Real Estate Settlement Procedures Act ("RESPA") as to Defendant ASC         16**

**Plaintiff Has Properly Pleaded a Valid Cause of Action for Violation of California Civil Code §2923 as to Defendant ASC     16**

**Plaintiff Has Properly Pleaded a Valid Cause of Action for Violation of California Civil Code §2924 as to Defendant ASC      17**

**CONCLUSION** ............................................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*Allison v. California Adult Authority* 419 F2d 822, 823 (9th Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Balistreri v. Pacific Police Dep't* 901 F.2d 696, 699 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bly-Magee v. California* 236 F3d 1014, 1019 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Clegg v. Cult Awareness Network* 18 F.3d 752, 754 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Egan v. Mutual of Omaha Ins. Co.* 24 C3d 809 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Falk v. General Motors Corporation* 496 F.Supp.2d 1008, 1099 (ND CA 2007) . . . . . . . . . . . . . . . . . . . . . . 7

*Fields v. Legacy Health Sys.* 413 F.3d 943, 950 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gilligan v. Jamco Develop. Corp.* 108 F2d 246, 249 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hearn v. R.J. Reynolds Tobacco Co.* 279 F.Supp.2d 1096, 1102 (D AZ 2003) . . . . . . . . . . . . . . . . . . . . . . . 7

*Kaufman & Broad-South Bay v. Unisys Corp.* 822 F.Supp 1468, 1472 (ND CA 1993) . . . . . . . . . . . . . . . . . 7

*Pareto v. FDIC* 139 F3d 696, 699 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sparling v. Daou* 411 F3d 616, 622-23 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Syverson v. IBM Corp.* 472 F.3d (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Redwood City* 640 F2d 963, 966 *(9th Cir. 1981)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Washington v. Baezinger* 673 F.Supp 1478 (ND CA 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Rules**

Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Rule 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Statutes**

12 U.S.C. §2601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

California Civil Code §2954 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

California Commercial Code §3302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

California Commercial Code §3305(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiff Cheryl Bower (hereinafter "Plaintiff") purchased her home, located at 2274 Nectarine Drive, Santa Rosa, California, on or about March 29, 2006. Over the next year, Plaintiff received a supplemental property tax bill in excess of $7,000. Although Plaintiff was working on a repayment plan for the payment of these supplemental taxes, her loan servicer, America's Servicing Company (hereinafter "ASC"), paid the supplemental taxes and sent Plaintiff notice that an escrow account would be imposed on her account. Since the additional escrow payments made Plaintiff's payment skyrocket, she contacted ASC to request assistance with amortizing these amounts over a longer period of time to allow her to maintain the payments on her loan. ASC refused to even entertain a workout of this issue with Plaintiff.

Plaintiff sought the assistance of a loan modification company to assist her with meeting her obligations under the mortgage note. ASC refused to work with her representative in working out the issues on this note.

Plaintiff sought legal representation. ASC refused to respond in any manner whatsoever to Plaintiff's legal representatives.

Plaintiff was forced to file suit to enforce the express covenants of the mortgage note and the Deed of Trust. At this time, Plaintiff requests declaratory relief and damages resulting from the wrongful foreclosure of her home.

**STATEMENT OF FACTS**

Plaintiff is a married woman who purchased her home as her sole and separate property and took out a mortgage loan in her name alone. Although the signed loan documents list a closing date of March 9, 2006, Plaintiff actually purchased the property on March 29, 2006. This discrepancy resulted from her purchase of new construction, and delays on the part of the developer slowed the anticipated closing of her purchase of the home.

1    In September, 2006, ASC became the new servicer of Plaintiff's loan. (Complaint, Ex. B)
2 At the time Plaintiff purchased the home, she understood that property taxes would not be paid
3 through an escrow or impound account, and that she would be responsible for the payment of her
4 property taxes. (Complaint, Ex. F) Plaintiff also understood that, even if Plaintiff had an
5 impound account, supplemental property taxes, a one-time tax imposed on a homeowner
6 subsequent to the purchase of a home, would not be paid from such an escrow account.
7 (Complaint, Ex. G) In any event, Plaintiff understood that she, not her mortgage servicer, would
8 be responsible for the payment of the supplemental tax bill, whether an escrow account was
9 instituted or not.

10    On or about April 1, 2006, Plaintiff moved into her home, where she continues to reside.
11 (Complaint, ¶18) On or about December, 2006, Plaintiff received a bill for a regular property tax
12 installment, which she paid promptly. (Complaint, ¶ 19) On or about April 10, 2007, Plaintiff
13 received her next regular property tax installment and paid it promptly. (Complaint, ¶ 20) In
14 December, 2007, Plaintiff paid her next regular property tax bill promptly. (Complaint, ¶ 21)
15 Also in 2007, Plaintiff received a supplemental tax bill, which she did not immediately pay, but
16 instead contacted the Sonoma County Tax Assessor to discuss payment arrangements. Plaintiff
17 was assured she could make payments to satisfy the supplemental taxes now owed. (Complaint
18 ¶22-24)

19    Defendant ASC without notice to Plaintiff, and in direct contravention to the express
20 terms of the notice Plaintiff signed when she closed the loan (Complaint, Ex. G) paid the
21 supplemental tax bill and wrongfully used this payment as an excuse to impose an escrow
22 account on Plaintiff's loan. (Complaint, ¶25) ASC also paid the April, 2008 regular tax
23 installment more than two months in advance of when the installment was actually due.
24 (Complaint, ¶25)

25    Over the next year, Plaintiff tried repeatedly to get some sort of relief from the imposition

Plaintiff's Opposition to Defendant Wells Fargo's Motion to Dismiss            *Bower v. ASC et. al.*

of the additional fees imposed on her mortgage account. Until the wrongful imposition of this escrow account, Plaintiff was never late in making her monthly mortgage payment. In fact, Plaintiff continued making her regular mortgage payments for many months after the imposition of an escrow account on her loan.

The mortgage Deed of Trust (hereinafter "Note") currently held by ASC lists the proper application of payments or proceeds under Section 2 of the "Uniform Covenants" of the Note. (Complaint, Ex. H) That Section states,

> Application of Payments or Proceeds. Except as otherwise described in Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) any amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security instrument, and then to reduce the principal balance of the Note.

However, instead of crediting the amounts Plaintiff paid according to the terms of the Note, by applying funds to interest, principal, and *then* to Section 3 amounts, ASC applied payments to Section 3 amounts first, and refused to apply remaining funds to interest and principal even though the Note states the servicer *shall* apply payments in such an order.

Section 3 amounts are described in the "Uniform Covenants" section of the Note as follows:

> Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: 1) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property...

Notwithstanding the fact that ASC should not have instituted an escrow account on Plaintiff's loan in the first place, ASC exacerbated the damage to Plaintiff by failing to apply Plaintiff's payments as specifically described in the Note. For this continuing failure, ASC was

Plaintiff's Opposition to Defendant Wells Fargo's Motion to Dismiss                                                                 *Bower v. ASC et. al.*

either negligent or acted willfully in an attempt to divest Plaintiff of her legal, equitable, and possessory interest in her home.

ASC claims Plaintiff's failure to pay is the result of foreclosure proceedings continuing on Plaintiff's property. However, ASC brought about this result by failing to credit Plaintiff's payments in the correct order. On March 23, 2009, ASC generated a document entitled "Escrow Disclosure Statement and Notice of New Mortgage Payment. (Complaint, Ex. M) That document reveals ASC is holding $13,315.83 in the escrow account related to Plaintiff's mortgage. To date, these funds have never been applied to the interest or principal payments owed on Plaintiff's account. Instead, ASC continued with recording a Notice of Default on January 26, 2009. (Complaint, ¶33) ASC continued in its efforts to steam roll over Plaintiff by recording a Notice of Trustee's Sale on Plaintiff's home on April 27, 2009.

In the final analysis, foreclosure on Plaintiff's home would not have been scheduled on May 19, 2009 had ASC made an effort to work out the problems with this loan. Foreclosure likewise would not have been scheduled on May 19, 2009 had ASC not failed utterly in their duty to apply Plaintiff's payments according to the terms of the Note.

**ARGUMENT**

**The Legal Standard on a Motion to Dismiss**

A complaint may be dismissed as a matter of law pursuant to Rule 12(b)(6) for one of two reasons: 1) lack of a cognizable theory, or 2) absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacific Police Dep't* 901 F.2d 696, 699 (9th Cir. 1990) For purposes of a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to Plaintiff. *Syverson v. IBM Corp.* 472 F.3d (9th Cir. 2007)

"A complaint should not be dismissed unless it appears beyond all doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Clegg v. Cult*

Plaintiff's Opposition to Defendant Wells Fargo's Motion to Dismiss                    *Bower v. ASC et. al.*

*Awareness Network* 18 F.3d 752, 754 (9th Cir. 1994) In ruling on a 12(b)(6) motion, the court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *Pareto v. FDIC* 139 F3d 696, 699 (9th Cir. 1998) However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *See Fields v. Legacy Health Sys.* 413 F.3d 943, 950 (9th Cir. 2005)

"The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Develop. Corp.* 108 F2d 246, 249 (9th Cir. 1997) As a result, Rule 12(b)(6) motions are only granted in "extraordinary" circumstances. *United States v. Redwood City 640 F2d 963, 966 (9th Cir. 1981)* Leave to amend must be granted unless it is clear that that complaint cannot be saved by any amendment. *See Sparling v. Daou* 411 F3d 616, 622-23 (9th Cir. 2005)

In determining whether to grant the motion, courts look to the complaint itself, plus any documents that are properly attached to the complaint. Documents that are incorporated by reference to the complaint are treated as part of the complaint. *Kaufman & Broad-South Bay v. Unisys Corp.* 822 F.Supp 1468, 1472 (ND CA 1993) At this stage of the proceedings, any ambiguity in the complaint must be resolved in plaintiff's favor. *Hearn v. R.J. Reynolds Tobacco Co.* 279 F.Supp.2d 1096, 1102 (D AZ 2003)

When a complaint alleges fraud, Rule 9(b) of the Federal Rules of Civil Procedure makes clear that the pleadings must be specific enough to give defendants "notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California* 236 F3d 1014, 1019 (9th Cir. 2001) A fraud by omission claim does not need to meet the strict requirements of the Rule. *See Washington v. Baezinger* 673 F.Supp 1478 (ND CA 1987) (noting that in fraud by omission cases, a plaintiff cannot plead either the specific time of the omission or the place, as he is not alleging an act, but a failure to act.) Further, in *Falk v. General Motors*

Plaintiff's Opposition to Defendant Wells Fargo's Motion to Dismiss                    *Bower v. ASC et. al.*

1  *Corporation* 496 F.Supp.2d 1008, 1099 (ND CA 2007), the court ruled that a "fraud by

2  omissions claim can succeed without the same level of specificity required by a normal fraud

3  claim."

4  Finally, in considering the 12(b)(6) motion, courts "do not inquire whether the plaintiffs will

5  ultimately prevail, only whether they are entitled to offer evidence to support their claims." *See*

6  *Allison v. California Adult Authority* 419 F2d 822, 823 (9th Cir. 1969)

7  To the extent that Plaintiffs have not adequately raised *any* of the legal theories discussed

8  herein, Plaintiffs respectfully request leave to amend to include those allegations and claims.

9  **Plaintiff Has Properly Pleaded a Valid Cause of Action For Negligent Servicing As**

10  **to Defendant ASC**

11  As described above, and in the Complaint, ASC failed to properly apply payments on

12  Plaintiff's account. Incorporated by reference in the Complaint is the above-referenced Escrow

13  Statement (Complaint, Ex. M), produced by defendant ASC, evidencing ASC's complete failure

14  to apply payments to principal and interest, despite a surplus of fees in Plaintiff's escrow

15  account.

16  A mortgage servicer is a company that is hired, by the holder of the note on a piece of

17  real property, to send statements to the borrower, collect the borrower's payments, apply the

18  payments in a timely fashion, report correctly when payments are not made, and facilitate the

19  process of the borrower's performance under the mortgage or deed of trust. Because of this role,

20  a servicer has a basic duty to follow the terms of the contract between borrower and lender. The

21  entire reason for the mortgage servicer's existence is to accept payments and apply them to the

22  borrower's account. If the servicer fails to execute these duties in a competent manner, then the

23  servicer has breached their duty to both the borrower and the holder of the note, because

24  inevitably the borrower and lender will be damaged by the loan servicer's failure to act.

25  This case would never have been filed if someone at ASC had looked at Plaintiff's

Plaintiff's Opposition to Defendant Wells Fargo's Motion to Dismiss                    *Bower v. ASC et. al.*

1  account and realized this never should have happened and agreed to work with Plaintiff to
2  correct the errors in payment application. Instead, ASC continues to defend its actions by
3  blaming Plaintiff for not making payments that, in actuality, were made. ASC blindly refuses to
4  consider it may have made a mistake in applying her payments and continues to foreclose on
5  Plaintiff's home.

6  Notwithstanding the fact that the Deed of Trust clearly dictates the order in which
7  payments are to be applied, ASC has failed to apply additional funds paid by Plaintiff to
8  principal and interest on her account. By ASC's own admission (Complaint, Ex. M), over
9  *thirteen thousand dollars* has been paid by Plaintiff that has not been credited to Plaintiff's
10 account. Instead, ASC continues to hold these funds in an escrow account as a "surplus."
11 Common sense would dictate that, at some point, the escrow account was properly funded and
12 excess funds should now be applied toward the interest and principal on Plaintiff's account, *yet*
13 *this has never been accomplished by any representative of ASC*. As a result, there is a clear
14 breach of the duty to accept and apply payments by ASC, and to facilitate Plaintiff's
15 performance under the terms of the deed of trust. This has resulted in damages to Plaintiff.

16 Plaintiff has properly pleaded her first cause of action for negligent servicing against
17 ASC and respectfully requests Defendants' motion to dismiss as to this cause of action be
18 denied.

19 **Plaintiff Has Properly Pleaded A Valid Cause of Action for Breach of the Implied**
20 **Covenant of Good Faith and Fair Dealing as to Defendant ASC**

21 Implied in every contract is the covenant that the parties will act in good faith to carry out
22 their duties under the contract. (*Egan v. Mutual of Omaha Ins. Co.* 24 C3d 809 (1979))
23 California courts have long recognized this covenant requires neither party take actions that
24 deprive the other of the benefits of the agreement. (*Koehrer v. Superior Court* 181 CA3d 1155
25 (1986))

1    Here, ASC acted to deprive Plaintiff of the benefits of the loan contract by taking her
2 payments and refusing to apply them to reflect an accurate portrayal of Plaintiff's payment
3 history (Complaint, Ex. M). ASC is required by the express mandates of the Deed of Trust to
4 apply payments first to interest, then to principal and third to escrow items (Complaint, Ex. H).
5 ASC failed to do so.

6    When Plaintiff brought the error to ASC's attention, ASC ignored Plaintiff's request for a
7 proper application of her payments, and instead foreclosed on her home (Complaint, ¶27, 30).

8    ASC acted to deprive Plaintiff of the benefits of the loan contract by forcing her to submit
9 to an escrow account, in violation of California Civil Code §2954, which indicated a lender or
10 servicer may impose an escrow account on a borrower who fails to timely *two consecutive*
11 property tax installments. (Complaint, ¶26, Ex. I)

12    When Plaintiff brought this error to ASC's attention and requested ASC work with her to
13 ensure the supplemental taxes were paid in a manner that Plaintiff could afford while still being
14 able to afford to buy groceries, ASC ignored Plaintiff's request and instead foreclosed on her
15 home. (Complaint, ¶30)

16    ASC acted to deprive Plaintiff of the benefits of the loan contract by forcing her to submit
17 to an escrow account because of *supplemental* property taxes that Plaintiff was expressly
18 informed the lender had no intention of paying via an escrow account or otherwise. (Complaint,
19 Ex. G) Exhibit G to the Complaint is titled, "Important Notification About Property Taxes." That
20 document clearly states, "only taxes due on December and April will be paid from the Trust
21 Fund (impound) accounts." Any reasonable person would take that clear statement to mean that
22 the loan servicer would not pay supplemental taxes, *even if an escrow account were established*.
23 Further, other clauses in the Deed of Trust that Defendant attempts to rely upon for the
24 proposition that ASC was entitled to perfect its security interest are by comparison confusing
25 legalese and buried clauses that Plaintiff, or any other normal and reasonable person, would not

Plaintiff's Opposition to Defendant Wells Fargo's Motion to Dismiss                *Bower v. ASC et. al.*

readily understand to mean the exact opposite of the clear language of the "Important Notice About Property Taxes."

When Plaintiff questioned the need for an escrow account on her regular property taxes, which she had timely paid for the past two years, ASC ignored Plaintiff and instead foreclosed on her home. (Complaint, ¶30)

ASC acted to deprive Plaintiff of the benefits of the loan contract by failing to apply her payments to interest and principal, even after the escrow account was completely funded. (Complaint, Ex. I and M) Despite an exorbitant surplus in Plaintiff's escrow account, ASC held funds in abeyance and refused to credit them to Plaintiff's account. (Complaint, Ex. M)

When Plaintiff attempted to bring this problem to ASC's attention, ASC responded by completely ignoring Plaintiff and instead foreclosing on her home. To date, ASC claims more than thirty-three thousand dollars is owing on the account, yet fails to recognize it has already received almost half that amount. At some point, ASC will be forced to account for the escrow surplus. Unfortunately for Plaintiff, it is apparent ASC intends to wait until after Plaintiff has lost her home to wrongful foreclosure before that happens.

Plaintiff has properly pleaded her second cause of action for breach of the implied covenant of good faith and fair dealing against ASC and respectfully requests Defendants' motion to dismiss as to this cause of action be denied.

**Plaintiff Has Properly Pleaded a Valid Cause of Action for Fraud and Misrepresentation as to Defendant ASC**

As a basis for dismissal of this cause of action, ASC claims to have no liability for the actions of the originating lender that were fraudulent as to Plaintiff.

While the holder in due course doctrine, codified in California Commercial Code §3302, will protect a mortgage servicer from many of the claims a borrower has against the originator, the doctrine does not eliminate all claims that a borrower may have. California Commercial

13

Code §3305(a)(1) provides,
> The right to enforce the obligation of a party to pay an instrument is subject to all of the following… (C) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or essential terms

Here, Plaintiff was deceived as to the true nature of the essential terms of the contract when she was provided multiple Truth in Lending disclosures in connection with her loan. (Complaint, ¶51) None of these disclosures accurately reflected the essential and material terms of the loan. (Complaint, Ex. C, D, and E)

ASC is prevented from claiming they possess no liability for the deceit that lured Plaintiff into a loan that she did not understand.

Further, Plaintiff was led to believe by the express disclosures she signed at the time of closing her loan, that she alone would be responsible for paying supplemental property taxes on her property. (Complaint, Ex. G)

Instead, Plaintiff was forced to overpay into an escrow account, despite the clear assertions of the documents she signed at the time of loan closing. (Complaint, Ex. G) Nowhere in its Motion to Dismiss does Defendant ASC address the gross discrepancy between the clear language of the "Important Notice About Property Taxes" and the subsequent actions of ASC with regard to Plaintiff's mortgage account.

Plaintiff has properly pleaded her third cause of action for fraud against ASC and respectfully requests Defendants' motion to dismiss as to this cause of action be denied.

**Plaintiff Has Properly Pleaded a Valid Cause of Action for Breach of Contract as to Defendant ASC**

As discussed above, the very reason for a mortgage servicing company to exist at all is to provide a service in taking payments, applying funds properly, issuing statements, and delivering other important notices governed by state and federal statute to facilitate the borrower's performance under the contract.

Plaintiff's Opposition to Defendant Wells Fargo's Motion to Dismiss　　　　　　　　　*Bower v. ASC et. al.*

1   Indeed, the servicing of the loan is itself a contract, whereby the loan servicer agrees to
2 take payments and apply them according to the terms of the Deed of Trust and the promissory
3 note evidencing the mortgage.

4   When ASC failed to apply payments in the order clearly dictated by the Deed of Trust
5 (Complaint, Ex. H, "Uniform Covenants" Section 2. "Application of Payments or Proceeds."),
6 ASC was in breach of the express terms of the contract. ASC may now try to color it any way
7 they want, but breach of express terms of a contract is breach of contract, nonetheless.

8   Plaintiff has properly pleaded her fourth cause of action for breach of contract against
9 ASC and respectfully requests Defendants' motion to dismiss as to this cause of action be
10 denied.

11   **Plaintiff Has Properly Pleaded a Valid Cause of Action for Violation of California**
12   **Civil Code Section 2954 as to Defendant ASC**

13   Defendant attempts to mislead the court with its red herring argument that the Real Estate
14 Settlement Procedures Act is the only applicable law that governs the actions of ASC with regard
15 to Plaintiff's mortgage loan account. By Defendant's logic, if two parties enter a contract, and
16 the Uniform Commercial Code is mentioned in the written contract, then one party would be free
17 to commit a tort upon the other and later present the defense that only the Uniform Commerical
18 Code may be used to govern the actions of the parties. This is flawed logic.

19   Plaintiff readily agrees the Real Estate Settlement Procedures Act is applicable to the
20 case at bar. This is why the Complaint states a cause of action for violation of the Real Estate
21 Settlement Procedures Act. However, Plaintiff also has stated a valid claim for violation of
22 California Civil Code §2954. (Complaint, ¶64) Since California law is clear that an impound
23 account may be imposed only upon a failure to pay *two consecutive tax installments on the*
24 *property*, ASC was in violation of these clear standards set forth in §2954.

25   Plaintiff has properly pleaded her fifth cause of action for violation of California Civil

Plaintiff's Opposition to Defendant Wells Fargo's Motion to Dismiss                                    *Bower v. ASC et. al.*

1  Code §2954, and respectfully requests Defendant's motion to dismiss as to this cause of action
2  be denied.

3  **Plaintiff Has Properly Pleaded a Valid Cause of Action for Violations of the Truth**
4  **in Lending Act and the Real Estate Settlement Procedures Act ("RESPA") as to**
5  **Defendant ASC**

6  As discussed above, Plaintiff agrees the Real Estate Settlement Procedures Act
7  (hereinafter "RESPA") governs some of the actions ASC has taken with respect to Plaintiff's
8  mortgage loan. 12 U.S.C. §2601 requires mortgage servicers account to borrowers for any
9  surplus held in an escrow account. Further, in ASC's own motion to dismiss, at page 12, lines
10 15-17 as well as the Complaint at Exhibit H, it is expressly stated that ASC may not hold funds
11 in abeyance in excess of the maximum amount a lender can require under RESPA. *Yet ASC has*
12 *done so and continues to do so.* If that is not a violation of RESPA as well as Cal. Civ. Code
13 §2954, it remains to be seen what *would* be a violation of RESPA.

14 Similarly, Plaintiff provides the excessive and contradictory array of Truth in Lending
15 disclosures given her as Exhibits C, D, and E to the Complaint. ASC is barred from asserting the
16 "we didn't do it, someone else did it" defense, grounded in the holder in due course doctrine, as a
17 defense to fraud that caused the borrower to fail to know the essential terms of the contract. (See
18 discussion of holder in due course doctrine, *supra*) The amount and nature of payments are *the*
19 *most essential* contract terms to a borrower, along with interest rate. Thus, ASC is stopped from
20 denying liability for the fraud exacted upon Plaintiff for a failure to provide her the consumer
21 protections Truth in Lending aims to provide.

22 Plaintiff has properly pleaded her sixth and seventh causes of action for violation of
23 RESPA and Truth in Lending, and respectfully requests Defendant's motion to dismiss as to
24 these causes of action be denied.

25 **Plaintiff Has Properly Pleaded a Valid Cause of Action for Violation of California**

Plaintiff's Opposition to Defendant Wells Fargo's Motion to Dismiss                    *Bower v. ASC et. al.*

**Civil Code §2923 as to Defendant ASC**

Defendants offer two recent Southern District cases as exemplars of case precedent concerning Cal. Civ. Code §2923. However, both the cases cited by Defendant rested almost completely on the premise that injunctive relief be granted for failure to "produce the note" and lack of standing to foreclose.

Plaintiff here asserts, while she may lack original standing to bring an action to vindicate the rights of members of a loan pool for violations of the duty owed to pooling members by a loan servicer, Plaintiff may assert adequate third party standing to bring such an action for two reasons. First, there is a special relationship between Plaintiff and the members of the investor pool, in that both have an interest in maximizing, on a net present value basis, the stream of income to the servicer. Everyone in America is aware of the enormous bailouts and government subsidies given to help the flailing banks and insurance companies as a result of the incredible losses sustained in the subprime crisis. In the end, taxpayers and investors alike bear the cost of those losses, especially when insurance companies such as AIG are bankrupted in order to make investors whole on thousands of foreclosed properties. Second, it is well known that the investors of these pooling agreements are passive investors, who will be unable to vindicate their rights themselves. Thus, allowing individual plaintiff borrowers to seek redress is a viable alternative to investor claims. As such, Plaintiff should be allowed to establish a cause of action, based on third party standing, for violation of Cal.Civ. Code §2923.

As such, Plaintiff has properly pleaded a cause of action against Defendant ASC for violation of California Civil Code §2923, and respectfully request that Defendant's motion to dismiss as to that cause of action be denied.

**Plaintiff Has Properly Pleaded a Valid Cause of Action for Violation of California Civil Code §2924 as to Defendant ASC**

Plaintiff's Opposition to Defendant Wells Fargo's Motion to Dismiss                    *Bower v. ASC et. al.*

1  Defendants similarly assert that they retain no liability for failing to follow the statutory
2  requirements of California Civil Code §2924. Defendant even has the audacity to assert that
3  since Plaintiff was successful in mitigating her damages by filing suit and providing excessive
4  notice (at her expense) to Defendant via continued faxes and e-mail by her counsel of record,
5  that Plaintiff has not incurred any damages as a result of the actions of ASC. This is patently
6  false.

7  As discussed throughout this argument, there would be no need for Plaintiff to file suit
8  had someone, *anyone*, at ASC recognized that something about the application of payments on
9  Plaintiff's account was not right, and taken responsibility for ensuring that it was made right. As
10  a direct result of those failings, ASC continued to steam roll over Plaintiff, in direct violation of
11  her legal, equitable and possessory interest in her home. There is no doubt that no sale would
12  have been scheduled for Plaintiff's home had her payments been properly applied. Even
13  assuming, *arguendo*, the escrow account was properly imposed (which Plaintiff does not
14  concede), the order to application of Plaintiff's continued payments was in flagrant violation of
15  the express terms of the Deed of Trust. Had ASC properly applied payments, no Notice of
16  Default would have been recorded. No Notice of Sale would have commenced.

17  Had ASC properly applied the payments, and not continued to blatantly violate all
18  common sense, all reasonable business practices and its contractual duties, Plaintiff's account
19  would have been credited with over thirteen thousand dollars of payments once the escrow
20  account was completely funded, and no Notice of Default would have been recorded, and no
21  Notice of Sale would have commenced.

22  Further, in carrying out the statutory duties of providing adequate notice, ASC still
23  failed. The statute is clear notice must be posted on the house. The purpose of also providing
24  notice in the form of a physical posting, is to provide *adequate* notice to the borrower. Since a
25  certified letter mailed 20 days in advance of the sale can be delayed by up to five days, this can

Plaintiff's Opposition to Defendant Wells Fargo's Motion to Dismiss                    *Bower v. ASC et. al.*

cut short the borrower's opportunity to act by 25% of the total notice period. With such a short notice period, a few days is not a small issue. ASC's attempts to belittle the issue simply belie their callous intent to divest Plaintiff of her home.

Plaintiff has properly pleaded her eighth cause of action for violation of California Civil Code §2924, and respectfully requests Defendant's motion to dismiss as to this cause of action be denied.

**CONCLUSION**

Defendant Wells Fargo has provided no basis for a dismissal of Plaintiff's claims under the facts of this case. As such, Plaintiff respectfully requests Defendant Wells Fargo Bank, N.A., dba ASC, America's Servicing Company's motion to dismiss be denied as to each cause of action, and Plaintiff be afforded the opportunity to present further evidence in support of her claims against this Defendant.

If any of Plaintiff's pleadings regarding any cause of action are found lacking by the Court, Plaintiff respectfully requests leave to amend the Complaint to meet the pleading requirements for each cause of action.

DATED:   July 17, 2009                     HENDRICKSON LEGAL SERVICES

                                        by    _____/s/ John Hendrickson_____
                                                   JOHN HENDRICKSON
                                                   Attorney for Plaintiff
                                                   CHERYL BOWER